01

02

03

04

05           UNITED STATES DISTRICT COURT
         WESTERN DISTRICT OF WASHINGTON
06                  AT SEATTLE

07  DENNIS MARKEY,                    )
                                      )   CASE NO. C13-1393-JLR-MAT
08         Plaintiff,                 )
                                      )
09         v.                         )   REPORT AND RECOMMENDATION
                                      )   RE: SOCIAL SECURITY DISABILITY
10  CAROLYN W. COLVIN, Acting         )   APPEAL
    Commissioner of Social Security,  )
11                                    )
           Defendant.                 )
12  _____ )

13         Plaintiff Dennis Markey proceeds through counsel in his appeal of a final decision of the

14  Commissioner of the Social Security Administration (Commissioner).   The Commissioner

15  denied  plaintiff's  applications  for  Supplemental  Security  Income  (SSI)  and  Disability

16  Insurance Benefits (DIB) after a hearing before an Administrative Law Judge (ALJ).   Having

17  considered the ALJ's decision, the administrative record (AR), and all memoranda, the Court

18  recommends this matter be REMANDED for further administrative proceedings.

19                 **FACTS AND PROCEDURAL HISTORY**

20         Plaintiff was born on XXXX, 1949.[1]   He completed three years of college, and

21

22         _____

           1 Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal Rule of
    Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case

REPORT & RECOMMENDATION
PAGE -1

01  previously worked as a mail sorter and in temporary jobs as a warehouse worker, shipping

02  packager, stocker, bartender, retail clerk, and medical supply technician.   (AR 83-84, 87, 235.)

03      Plaintiff filed applications for DIB and SSI in June 2010, alleging disability since May

04  1, 1999.   (AR 24, 198-209.)   His applications were denied initially and on reconsideration,

05  and he timely requested a hearing.

06      ALJ Cheri L. Filion held a hearing on January 12, 2012, taking testimony from plaintiff

07  and a vocational expert (VE).   (AR 40-97.)   At the hearing, plaintiff amended his alleged

08  onset date to September 30, 2003.   (AR 24, 43.)   On April 23, 2012, the ALJ rendered a

09  decision finding plaintiff not disabled.   (AR 21-39.)   Plaintiff timely appealed.

10      The Appeals Council denied plaintiff's request for review on June 7, 2013 (AR 1-5),

11  making the ALJ's decision the final decision of the Commissioner.   Plaintiff appealed this

12  final decision of the Commissioner to this Court.

13                            **JURISDICTION**

14      The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

15                            **DISCUSSION**

16      The Commissioner follows a five-step sequential evaluation process for determining

17  whether a claimant is disabled.   *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).   At step one, it

18  must be determined whether the claimant is gainfully employed.   The ALJ found plaintiff had

19  not engaged in substantial gainful activity since September 30, 2003, the amended onset date.

20  At step two, it must be determined whether a claimant suffers from a severe impairment.   The

21  ALJ found that through plaintiff's date last insured (DLI) of September 30, 2003, plaintiff's

22  _____

Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT & RECOMMENDATION
PAGE -2

01  hypertension, depression, and substance abuse in remission were non-severe, and that his right

02  shoulder problems did not develop until 2008.   The ALJ found, however, that since June 10,

03  2010, the date of plaintiff's SSI application, plaintiff's osteoarthritis of the right shoulder,

04  dysthymia, and episodic major depressive disorder were severe.   She found a variety of other

05  impairments non-severe.   Step three asks whether a claimant's impairments meet or equal a

06  listed impairment.   The ALJ found plaintiff's impairments did not meet or equal the criteria of

07  a listed impairment.

08          If a claimant's impairments do not meet or equal a listing, the Commissioner must

09  assess residual functional capacity (RFC) and determine at step four whether the claimant has

10  demonstrated an inability to perform past relevant work.   The ALJ found plaintiff had the RFC

11  to perform medium work, with the exception that he could perform occasional reaching

12  overhead with the right upper extremity.   The ALJ also limited plaintiff to simple, repetitive

13  tasks.   The ALJ found plaintiff had no past relevant work because his work within the past 15

14  years was not performed at substantial gainful activity level.

15          If a claimant demonstrates an inability to perform past relevant work or he has no past

16  relevant work, the burden shifts to the Commissioner to demonstrate at step five that the

17  claimant retains the capacity to make an adjustment to work that exists in significant levels in

18  the national economy.   With consideration of the Medical-Vocational Guidelines ("the grids"),

19  the ALJ concluded there were jobs existing in significant numbers in the national economy

20  plaintiff could perform.   The ALJ, therefore, concluded plaintiff was not disabled at any time

21  from the alleged onset date through the date of the decision.

22          This Court's review of the final decision is limited to whether the decision is in

REPORT & RECOMMENDATION
PAGE -3

01   accordance with the law and the findings supported by substantial evidence in the record as a

02   whole.   *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).   Substantial evidence means

03   more than a scintilla, but less than a preponderance; it means such relevant evidence as a

04   reasonable mind might accept as adequate to support a conclusion.   *Magallanes v. Bowen*, 881

05   F.2d 747, 750 (9th Cir. 1989).   If there is more than one rational interpretation, one of which

06   supports the final decision, the Court must uphold that decision.   *Thomas v. Barnhart*, 278

07   F.3d 947, 954 (9th Cir. 2002).

08       Plaintiff argues the ALJ erred in (1) finding depression non-severe prior to the DLI; (2)

09   erroneously evaluating the medical opinion evidence; (3) failing to incorporate all functional

10   limitations into his RFC; (4) failing to discuss the disability determination by the Department of

11   Veteran's Affairs (VA); and (5) relying on the grids at step five, rather than the testimony of a

12   VE.   He requests remand for further administrative proceedings.   The Commissioner

13   maintains the ALJ's decision has the support of substantial evidence and should be affirmed.

14                                        <u>Step Two</u>

15       At step two, a claimant must make a threshold showing that his medically determinable

16   impairments significantly limit her ability to perform basic work activities.   *See Bowen v.*

17   *Yuckert*, 482 U.S. 137, 145 (1987) and 20 C.F.R. §§ 404.1520(c), 416.920(c).   "Basic work

18   activities" refers to "the abilities and aptitudes necessary to do most jobs."   20 C.F.R. §§

19   404.1521(b), 416.921(b).   "An impairment or combination of impairments can be found 'not

20   severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal

21   effect on an individual's ability to work.'"   *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir.

22   1996 (quoting Social Security Ruling (SSR) 85-28).   "[T]he step two inquiry is a de minimis

REPORT & RECOMMENDATION
PAGE -4

01 screening device to dispose of groundless claims." *Id.* (citing *Bowen*, 482 U.S. at 153-54).

02 An ALJ is also required to consider the "combined effect" of an individual's impairments in

03 considering severity. *Id.*

04       A diagnosis alone is not sufficient to establish a severe impairment. Instead, a claimant

05 must show that his medically determinable impairments are severe. 20 C.F.R. §§ 404.1520(c),

06 416.920(c). Also, the failure to list impairment as severe at step two may be deemed harmless

07 where associated limitations are considered at step four. *Lewis v. Astrue*, 498 F.3d 909, 911

08 (9th Cir. 2007).

09       Plaintiff challenges only the ALJ's step two finding that plaintiff's depression was not

10 severe through the DLI, September 30, 2003. The ALJ discussed the sparse medical evidence

11 prior to the DLI, which included a psychiatric evaluation in December 2002. (AR 27,

12 421-425.) At the evaluation, plaintiff complained of a loss of motivation, continual feelings of

13 depression, lack of energy, and residual anger. (AR 421.) He reported having been

14 diagnosed with major depression five years previously and that medications had been

15 minimally successful. (*Id.*) Plaintiff further reported that he sees his 17-year-old son weekly,

16 communicates with his daughter through e-mail, and regularly communicates with other

17 veterans through the internet. (AR 423.) He also reported that he enjoys writing and was

18 working on a book of short stories. (*Id.*) On mental status exam, plaintiff was alert, attentive,

19 and cooperative; he had appropriate grooming, wide range affect, and normal speech; his

20 thought process was circumstantial and he had "flight of ideas"; his insight, judgment, and

21 memory were good; and he was able to stay focused. (AR 424.) He was diagnosed with

22 depressive order. (AR 425.) As the ALJ noted, plaintiff was scheduled for a follow-up

REPORT & RECOMMENDATION
PAGE -5

01  appointment, but did not keep that appointment.   (AR 27, 420.)

02  The ALJ found that the evidence before September 30, 2003, established, at most, mild

03  limitations in activities of daily living, social functioning, and concentration, persistence, or

04  pace.  (AR 27.)  The ALJ found that plaintiff's lack of treatment for depression suggested

05  "that his symptoms were transient and not that severe."  (*Id.*)  The ALJ noted that plaintiff's

06  December 2002 mental status exam was unremarkable and showed good social and cognitive

07  functioning.  (*Id.*)  The ALJ also found that plaintiff's activities indicated intact mental

08  functioning.  (*Id.*)

09  Plaintiff does not challenge the ALJ's treatment of the medical evidence prior to the

10  DLI.  Rather, he contends that the ALJ erred because she failed to discuss relevant evidence

11  from after the DLI, specifically a treatment note from 2005 (AR 407-08) and a psychological

12  evaluation by Phyllis Sanchez, Ph.D., in 2006 (AR 516-523).  *See Smith v. Bowen*, 849 F.2d

13  1222, 1225-26 (9th Cir. 1988) (holding that post-DLI evidence can be relevant to evaluation of

14  the pre-DLI condition); *accord Lingenfelter v. Astrue*, 504 F.3d 1028, 1034 n.3 (9th Cir. 2007).

15  The 2005 treatment note provides no suggestion of retrospective application, and

16  therefore the ALJ did not err by failing to consider it.  (*See* AR 407-08.)  The Court, however,

17  cannot say the same about Dr. Sanchez's report.  Dr. Sanchez diagnosed plaintiff with major

18  depression and opined that he had moderate or marked limitations in his judgment and

19  decision-making abilities, ability to perform routine tasks, and social abilities.  (AR 517-18.)

20  She explained that her opinion of marked limitation in plaintiff's judgment was based on the

21  fact that he "stops going to work because too depressed even though knows he will <u>lose</u> job

22  because of it."  (AR 518 (emphasis in original).)  She supported her opinion of social

REPORT & RECOMMENDATION
PAGE -6

01   limitations by citing the fact that plaintiff lost 12 jobs in 12 years because he would stop going

02   to work because of depression.   (*Id.*)   Given that Dr. Sanchez's explanations for her opinions

03   looked back over the previous 12 years and multiple job losses due to depression, her report

04   could support a finding that plaintiff's depression had more than a minimal effect on his ability

05   to perform basic work activities prior to the DLI, even though it was rendered nearly three years

06   later.   The ALJ, therefore, erred by failing to consider it in deciding whether plaintiff

07   established that depression was a severe impairment prior to his DLI.

08           Nevertheless, the Court concludes that the ALJ's failure to consider Dr. Sanchez's

09   opinions at step two was a harmless error.[2]   There is no indication that Dr. Sanchez reviewed

10   plaintiff's medical record, and therefore her retrospective opinions were based on plaintiff's

11   self-reports.   The ALJ discounted plaintiff's credibility, a finding plaintiff does not challenge.

12   "An ALJ may reject a treating [or examining] physician's opinion if it is based 'to a large

13   extent' on a claimant's self-reports that have been properly discounted as incredible."

14   *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (quoting *Morgan v. Comm'r of Soc.*

15   *Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999)).   Accordingly, looking at the record as a

16   whole, the Court deems the ALJ's failure to discuss Dr. Sanchez's opinions at step two to be

17   "inconsequential to the ultimate nondisability determination."   *Molina v. Astrue*, 674 F.3d

18   1104, 1115 (9th Cir. 2012) (quoted sources omitted).

19   / / /

20           2  As discussed later in this report, the ALJ considered Dr. Sanchez's opinion in assessing plaintiff's RFC
     but rejected it because it was rendered several years prior to the SSI application date.   The Court, however, does

21   not rely on this discussion to find the ALJ's step two error harmless, *see Lewis*, 498 F.3d at 911 (failure to find
     impairment severe at step two may be harmless where associated limitations are considered at step four), because

22   the ALJ's reasoning related to the SSI application date is not sufficient to discount Dr. Sanchez's opinion as it
     relates to plaintiff's DIB application.

REPORT & RECOMMENDATION
PAGE -7

01                                    Physicians' Opinions

02        In general, more weight should be given to the opinion of a treating physician than to a

03 non-treating physician, and more weight to the opinion of an examining physician than to a

04 non-examining physician.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Where not

05 contradicted by another physician, a treating or examining physician's opinion may be rejected

06 only for "'clear and convincing'" reasons.  *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391,

07 1396 (9th Cir. 1991)).  Where contradicted, a treating or examining physician's opinion may

08 not be rejected without "'specific and legitimate reasons' supported by substantial evidence in

09 the record for so doing."  *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.

10 1983)).

11        In this case, plaintiff argues error in the ALJ's consideration of opinion evidence from

12 treating psychiatrist Carl Jensen, M.D.; examining psychologists Phyllis N. Sanchez, Ph.D.,

13 and Victoria McDuffee, Ph.D.; and non-examining doctors Robert Bernardez-Fu, M.D., and

14 Dale Thuline, M.D.

15 A.    Dr. Carl Jensen

16        On January 20, 2011, Dr. Jensen examined plaintiff and diagnosed him with dysthymic

17 disorder.[3]  (AR 461.)  Dr. Jensen originally assessed a GAF score of 65, and then crossed it

18 out on January 31, 2011, and assessed a GAF score of 40.  (*Id.*)  He opined plaintiff's

19 symptoms of sad mood, insomnia, poor energy, and poor motivation had a marked impact on

20 his ability to work, specifically that they made it difficult for plaintiff to engage with goals, be

21

22        ───────────────
        3 Dr. Jensen was one of plaintiff's treating doctors, however January 20, 2011, was the first time he saw
   plaintiff.   (AR 500.)

REPORT & RECOMMENDATION
PAGE -8

01  rested, complete tasks, and engage with people.  (AR 460.)  Dr. Jensen opined plaintiff had

02  marked limitations in his abilities to relate appropriately to co-workers and supervisors, interact

03  appropriately in public contacts, respond appropriately to and tolerate the pressures and

04  expectations of a normal work setting, and to maintain appropriate behavior in a work setting.

05  (AR 462.)   He opined plaintiff had moderate limitations in his abilities to understand,

06  remember and follow complex instructions, learn new tasks, exercise judgment, and make

07  decisions, and that plaintiff had mild limitations in his abilities to perform routine tasks and care

08  for self.  (*Id.*)  Dr. Jensen stated that plaintiff "is not able to maintain or complete organized

09  tasks."  (*Id.*)

10          The ALJ gave little weight to Dr. Jensen's opinion:

11          First, Dr. Jensen did not administer a mental status examination.   His opinion is
        therefore based solely on the claimant's subjective report, which, as discussed
12          above, is not fully credible.   I therefore accord greater weight to Dr. Ronay's
        opinion, which was performed three months earlier and is supported by a mental
13          status examination.   Second, in the DSHS form he completed, Dr. Jensen
        inexplicably crossed out the GAF score of 65 and replaced it with a GAF score
14          of 40.   I note that this change is internally inconsistent with Dr. Jensen's
        treatment notes in January 2011, which document a GAF score of 65 (8F35).   I
15          also note that, when Dr. Jensen saw the claimant in January 2011, it was their
        first meeting together.   Subsequent counseling records from the VA through
16          September 2011 consistently document a GAF score of 55, indicating moderate
        symptoms (14F).   Because a GAF score of 55 presents a more accurate
17          longitudinal picture of the claimant's mental functioning, I give it greater
        weight.

18

19  (AR 33.)

20          Plaintiff contends that the ALJ improperly rejected Dr. Jensen's opinion as based on

21  claimant's subjective report because Dr. Jensen's opinion specifically references his review of

22  VA chart notes and plaintiff's history of depression.  (AR 459.)   Plaintiff also asserts that Dr.

REPORT & RECOMMENDATION
PAGE -9

01  Ronay's report, which the ALJ favored over Dr. Jensen's report, does not contradict Dr.

02  Jensen's opinions.   Plaintiff further argues that the ALJ's determination that the GAF scores

03  are inconsistent is not a basis for rejecting Dr. Jensen's conclusions regarding plaintiff's

04  functional limitations, which are not contradicted by any treating physician.   Finally, plaintiff

05  argues that the ALJ mischaracterized Dr. Jensen as an evaluating, rather than a treating

06  physician.

07        Plaintiff is correct that substantial evidence does not support the ALJ's finding that Dr.

08  Jensen's opinion was based "solely" on plaintiff's subjective report.   Dr. Jensen's report

09  indicates that he reviewed plaintiff's chart notes from the Veterans Hospital, observed

10  plaintiff's "sad mood" and "poor motivation," and based his GAF score on "mental status exam

11  and hx in chart."   (AR 459-461.)   Nevertheless, as discussed below, additional valid reasons

12  support the ALJ's rejection of Dr. Jensen's opinion, and therefore this error was harmless.   *See*

13  *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008).

14        The ALJ properly assigned less weight to Dr. Jensen's opinion because Dr. Ronay's

15  contrary opinion was supported by a mental status exam.   *See Tonapetyan v. Halter*, 242 F.3d

16  1144, 1149 (9th Cir. 2001) (contrary opinions of examining and non-examining physicians

17  serve as specific and legitimate reasons).   As an initial matter, the ALJ reasonably found that

18  Dr. Jensen's opinion was not supported by a contemporaneous mental status exam.   *See*

19  *Morgan*, 169 F.3d at 599 ("Where the evidence is susceptible to more than one rational

20  interpretation, it is the ALJ's conclusion that must be upheld.") (citing *Andrews v. Shalala*, 53

21  F.3d 1035, 1041 (9th Cir. 1995)).   Despite Dr. Jensen's notation that the GAF score was based

22  on a mental status exam, the "mental status findings" in Dr. Jensen's January 20, 2011 chart

REPORT & RECOMMENDATION
PAGE -10

01  note are cursory and do not assess plaintiff's thought processes, cognitive abilities, judgment, or

02  insight.   (*Compare* AR 501 (Dr. Jensen's 1/20/11 chart note), *with* AR 437-38 (Dr. Ronay's

03  mental status exam).)

04         Moreover, plaintiff's does not challenge the ALJ's decision to give great weight to Dr.

05  Ronay's opinion.   Dr. Ronay found plaintiff to be "an intelligent man with dysthymia which

06  results in poor motivation."   (AR 438.)   She opined that "[d]espite his obstacles, the patient

07  has good concentration (for instance he can read for hours and can do calculations), is able to

08  interact socially, and is able to make good judgment calls.   He is able to follow simple and

09  complex commands."   (*Id.*)   These opinions are inconsistent with Dr. Jensen's opinions

10  summarized above.   Plaintiff nevertheless contends that Dr. Ronay's opinion does not

11  contradict Dr. Jensen's opinion that plaintiff is limited in his ability to tolerate employment

12  settings.   Although Dr. Ronay did not specifically opine that plaintiff would be able to tolerate

13  employment settings, that inference is reasonably drawn from her report.   *See Magallanes*, 881

14  F.2d at 755 (court may draw inferences relevant to doctors' findings and opinions).   As such,

15  the Court concludes that the ALJ's decision to give more weight to Dr. Ronay's opinion than to

16  Dr. Jensen's opinion is supported by substantial evidence.

17         Substantial evidence also supports the ALJ's rejection of Dr. Jensen's GAF score of 40

18  because it was inconsistent with Dr. Jensen's treatment notes and subsequent treatment notes

19  from the VA hospital.   (AR 33, 499 (1/20/11 GAF of 65), 543-52 (GAF of 55 on 4/21/11,

20  5/12/11, 6/10/11, and 7/7/11).)   *See Morgan*, 169 F.3d at 603 (ALJ appropriately considers

21  internal inconsistencies within and between physicians' reports).   Plaintiff does not challenge

22  the ALJ's determination that Dr. Jensen's GAF score was inconsistent, but rather argues that

REPORT & RECOMMENDATION
PAGE -11

01 rejection of a GAF score does not provide a basis for rejecting functional limitations.   Even if

02 plaintiff is correct, however, his argument does not establish a basis for remand because, as

03 discussed, the ALJ properly rejected Dr. Jensen's opinion in favor of Dr. Ronay's opinion.   *See*

04 *Carmickle*, 533 F.3d at 1163 (error is harmless so long as substantial evidence supports the

05 ALJ's conclusions and the error does not negate the validity of the ALJ's ultimate conclusion).

06         Finally, plaintiff's argument that the ALJ mischaracterized Dr. Jensen as an evaluating

07 physician is not supported by the record.   Although the ALJ described Dr. Jensen as a "DSHS

08 examiner," she also discussed Dr. Jensen's treatment notes and recognized that plaintiff had

09 more than one visit with Dr. Jensen.   (AR 33.)

10         In sum, because the ALJ identified specific and legitimate reasons supported by

11 substantial evidence to reject Dr. Jensen's opinion, plaintiff has not shown that the ALJ erred in

12 assessing his opinion.

13 B.     Dr. Phyllis N. Sanchez

14         Dr. Sanchez examined plaintiff in June 2006 and opined he had either moderate or

15 marked limitations in his abilities to exercise judgment and make decisions, perform routine

16 tasks, relate appropriately to co-workers and supervisors, interact appropriately in public

17 contacts, respond appropriately to and tolerate the pressures and expectations of a normal work

18 setting, care for self, and maintain appropriate behavior.   (AR 518.)   The ALJ gave the

19 opinion little weight because it was issued more than four years before his SSI application.

20 (AR 32 n.1.)

21         Plaintiff contends that the ALJ failed to provide any clear and convincing reason to

22 reject Dr. Sanchez's conclusions.   The Court, however, agrees with the Commissioner that

REPORT & RECOMMENDATION
PAGE -12

01  although evidence that predates an application date may be relevant, the ALJ did not err

02  because Dr. Sanchez's opinion was remote in time and the ALJ fully considered the more recent

03  psychological evaluations that are more relevant to plaintiff's current functioning.   *See Brown*

04  *v. Comm'r of Soc. Sec.*, No. 11-17394, 2013 WL 3213351, at *1 (9th Cir. Jun. 26, 2013)

05  (affirming the Commissioner because the ALJ "properly rejected the testimony of 'some older

06  (pre-current application) assessments' in favor of 'more recent' opinions"); *Carmickle*, 533

07  F.3d at 1165 ("Medical opinions that predate the alleged onset of disability are of limited

08  relevance.").    Accordingly, plaintiff has not shown that the ALJ erred in assessing Dr.

09  Sanchez's opinion.

10  C.    Dr. Victoria McDuffee

11       The ALJ gave little weight to the opinion of Dr. McDuffee, who examined plaintiff in

12  February 2010.   (AR 32, 298-307.)   Plaintiff makes the conclusory argument that the ALJ

13  failed to provide "legitimate reasons supported by substantial record evidence" for rejecting Dr.

14  McDuffee's opinion.   (Dkt. 15 at 14.)   Plaintiff provides a brief summary of Dr. McDuffee's

15  report, but he does not discuss any of the four reasons the ALJ gave for discounting the doctor's

16  opinion.   (*See id.*; AR 32.)   As plaintiff's challenge regarding Dr. McDuffee is not argued

17  with any specificity, the Court considers the claim forfeited.   *See Independent Towers of Wash.*

18  *v. Wash.*, 350 F.3d 925, 929 (9th Cir. 2003) (court will not consider any claims that were not

19  specifically and distinctly argued in a party's opening brief); *see also Vandenboom v. Barnhart*,

20  421 F.3d 745, 750 (8th Cir. 2005) (rejecting out of hand conclusory assertion that ALJ failed to

21  consider whether claimant met listings because claimant provided no analysis of relevant law or

22  facts regarding listings); *Perez v. Barnhart*, 415 F.3d 457, 462 n.4 (5th Cir. 2005) (argument

REPORT & RECOMMENDATION
PAGE -13

01  waived by inadequate briefing).  It is not enough merely to present an argument in the

02  skimpiest way, and leave the Court to do counsel's work—framing the argument and putting

03  flesh on its bones through a discussion of the applicable law and facts.  *See, e.g.*, *Murrell v.*

04  *Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994) (perfunctory statements fail to frame and

05  develop issue sufficiently to invoke appellate review).

06  D.    Dr. Robert Bernardez-Fu and Dr. Dale Thuline

07       In October 2010, Dr. Bernardez-Fu reviewed plaintiff's medical records, including a

08  right shoulder x-ray from April 2008, which showed joint space narrowing and inferior humeral

09  osteophytosis at the glenhumeral joint, as well as mild osteoarthritis at the right

10  acromioclavicular joint.  (AR 435.)  He opined that plaintiff was limited to light work with

11  frequent overhead reaching with the right upper extremity, among other postural limitations.

12  (AR 428-35.)  In March 2011, Dr. Thuline reviewed the medical evidence and affirmed Dr.

13  Bernardez-Fu's opinion regarding plaintiff's functional limitations.  (AR 511.)

14       The ALJ declined to adopt the reviewing doctors' opinions that plaintiff was limited to

15  light work because of plaintiff's "active lifestyle, which includes bicycling hundreds to

16  thousands of miles annually," and because of plaintiff's medium exertional work in 2008 as a

17  pharmacy technician, a job plaintiff quit for non-medical reasons.  (AR 32.)  The ALJ also

18  declined to adopt the doctors' opinion that plaintiff could frequently reach overhead and instead

19  found that he was limited to occasional overhead reaching with the right upper extremity based

20  on updated x-rays from January 2011, which revealed some progression of the shoulder

21  arthritis.  (*Id.*)

22       Plaintiff contends that the ALJ erred because the reviewing doctors' opinions are

01  supported by plaintiff's treatment records, function reports, and hearing testimony, which

02  establish that his shoulder pain interfered with his daily activities and eventually precluded his

03  ability to ride his bike.  Plaintiff faults the ALJ for citing only plaintiff's past ability to ride a

04  bike to contradict all of the medical evidence.  The Commissioner responds that the ALJ's

05  proffered reasons provide substantial evidence to support her rejection of the reviewing

06  doctors' opinions.  The Commissioner also notes that none of plaintiff's doctors' notes contain

07  information that would support lifting limitations consistent with light work.

08      The Court agrees with the Commissioner.  An ALJ may properly reject a physician's

09  opinion upon finding it inconsistent with a claimant's level of activity.  *Rollins v. Massanari*,

10  261 F.3d 853, 856 (9th Cir. 2001).  While plaintiff takes a contrary view of the evidence of his

11  activities, he fails to demonstrate the ALJ's conclusion that those activities were inconsistent

12  with the reviewing doctors' opinions was not rational.  In particular, plaintiff wholly fails to

13  address the ALJ's finding that plaintiff performed medium work in 2008, during the time period

14  when shoulder x-rays confirmed his arthritis.  Moreover, although plaintiff supports his

15  position with his own hearing testimony, he fails to challenge the ALJ's adverse credibility

16  determination.  The ALJ provided specific and legitimate reasons for rejecting the opinion

17  evidence from the reviewing doctors and, therefore, her consideration of that evidence need not

18  be disturbed.

19                          Residual Functional Capacity

20      At step four, the ALJ must identify plaintiff's functional limitations or restrictions, and

21  assess his work-related abilities on a function-by-function basis, including a required narrative

22  discussion.  *See* 20 C.F.R. §§ 404.1545, 416.945; SSR 96-8p.  RFC is the most a claimant can

REPORT & RECOMMENDATION
PAGE -15

01  do considering his or her limitations or restrictions.  *See* SSR 96-8p.  The ALJ must consider

02  the limiting effects of all of plaintiff's impairments, including those that are not severe, in

03  determining his RFC.  §§ 404.1545(e), 416.945(e); SSR 96-8p.

04       Plaintiff contends that the ALJ's RFC fails to account for all of his exertional and

05  mental impairments.  First, plaintiff contends that the ALJ should have limited him to light

06  work based on the medical evidence and the reviewing doctors' opinions.  He relies on right

07  shoulder x-rays from 2008 and 2011 (AR 435, 465), treatment records illustrating chronic right

08  shoulder pain (AR 342-44) and decreased range of motion, and the fact that he received steroid

09  injections in his shoulder (AR 476-79).  This evidence, however, fails to establish that the

10  ALJ's RFC assessment is an unreasonable interpretation of the record as a whole.  As noted

11  above, the ALJ properly rejected the reviewing doctors' opinions.  The ALJ also considered

12  that the x-rays from 2008 and 2011 "revealed some progression" of plaintiff's shoulder

13  arthritis, and accordingly limited him to occasional overhead reaching in his right upper

14  extremity, despite the opinion of the reviewing doctors that plaintiff could frequently reach

15  overhead.  The ALJ summarized the medical evidence, which included reports of mild

16  shoulder pain on range of motion in April 2008 (AR 387), decreased range of motion in June

17  2009 but no pain on palpation (AR 353), full range of motion and 5/5 motor strength in January

18  2011 but mild tenderness to palpation (AR 495-96), and reduced range of motion two weeks

19  later but no signs of synovitis, sensory deficits, weakness, or atrophy (AR 488-89).  Although

20  the medical evidence reveals some limitation from plaintiff's right shoulder arthritis, the Court

21  cannot say that the ALJ was unreasonable in concluding that plaintiff could perform medium

22  work.  *See Morgan*, 169 F.3d at 599 ("Where the evidence is susceptible to more than one

01  rational interpretation, it is the ALJ's conclusion that must be upheld.") (citation omitted).

02      Next, plaintiff argues that the ALJ failed to consider his obesity in combination with his

03  other impairments in determining his RFC.   He cites the fact that he has been diagnosed with

04  obesity and suffers from resulting sleep and breathing problems.   (*See* AR 329-30.)   Yet

05  plaintiff fails to point "to any evidence of functional limitations due to obesity which would

06  have impacted the ALJ's analysis." *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

07  He also fails to assign error with the ALJ's finding that his sleep apnea would be controlled by

08  use of a CPAP device.   (AR 28.)   As such, plaintiff fails to establish that obesity, considered

09  alone or in combination with his other impairments, results in greater functional limitations

10  than accounted for in the RFC.

11      Finally, Plaintiff asserts that the ALJ erroneously failed to account for his mental

12  impairments in assessing his RFC.   Plaintiff challenges the ALJ's finding that his mental

13  condition has been "stable with medication and counseling" and the RFC's limitation to simple,

14  repetitive tasks.   He relies on his hearing testimony that he is no longer productively writing,

15  only bathes occasionally, and has been unable to maintain his apartment in acceptable

16  condition.   Again, however, plaintiff fails to establish that the ALJ's interpretation of the

17  record is unreasonable or lacking in supportive evidence.   *See Morgan*, 169 F.3d at 599.

18  Plaintiff does not challenge the ALJ's reliance on Dr. Ronay's opinion, which supports the

19  RFC, or the ALJ's adverse credibility finding, which entitles the ALJ to assess an RFC that is

20  less restrictive than plaintiff's testimony would indicate.

21      In sum, plaintiff has not shown that the ALJ erred in assessing his RFC.

22  / / /

REPORT & RECOMMENDATION
PAGE -17

01                         <u>VA Disability Rating Decision</u>

02         The record contains a VA disability rating decision from October 2011.   (AR 568-72.)

03 The second page of the disability decision, which appears to have summarized the medical

04 evidence supporting the disability rating, is not in the record.[4]   (*See* AR 568-69.)   Plaintiff

05 presented this evidence for the first time to the Appeals Council, which made it part of the

06 record.   (AR 4.)   *See Harman v. Apfel*, 211 F.3d 1172, 1180-81 (9th Cir. 2000) (evidence

07 submitted to the Appeals Council becomes part of the administrative record for the purposes of

08 judicial review); *Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996); *Ramirez v. Shalala*, 8 F.3d

09 1449, 1451-52 (9th Cir. 1993).   The Court reviews such evidence pursuant to "sentence four"

10 of 42 U.S.C. ' 405(g):   "The court shall have power to enter, upon the pleadings and transcript

11 of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner

12 of Social Security, with or without remanding the cause for a rehearing."   *See Andersen v.*

13 *Barnhart*, No. C02-2174-RSL, slip op. at 1-3 (W.D. Wash. Nov. 21, 2003) (Dkt. 26); *Ramel v.*

14 *Barnhart*, No. C05-1913-RSL-MAT, slip op. at 11-14 (W.D. Wash. Aug. 4, 2006) (Dkt. 18).

15 The Court must, therefore, determine whether there is substantial evidence to support the ALJ's

16 decision even taking the VA disability rating decision into consideration.

17         Plaintiff contends that remand is necessary because the VA disability determination

18 must be considered by the ALJ and ordinarily given great weight.   *See McCartey v. Massanari*,

19 298 F.3d 1072, 1076 (9th Cir. 2002) (ALJ must ordinarily give "great weight" to a VA

20 determination of disability).   If the VA decision is given great weight, according to plaintiff, it

21 _____

22         4 It appears plaintiff's counsel is aware of the missing page because in her motion to the Appeals
Council, she noted that "the enclosed proposed Exhibit is the entire exhibit made available to Counsel.   If
additional and more complete evidence becomes available, it will also be submitted."   (AR 566.)

01 would change the ultimate disability determination.   Plaintiff does not elaborate on these

02 arguments.

03        The Court is not persuaded that the VA decision undermines the substantial evidence

04 supporting the ALJ's decision.   The VA assigned a 10% disability rating for left hip bursitis

05 based on "limited or painful motion" (AR 569), which does not undercut the ALJ's finding that

06 hip impairment was not medically established based on unremarkable objective findings and

07 the lack of treatment (AR 28).   The VA assigned a 20% disability rating for right shoulder

08 arthritis based on "limitation of arm motion midway between side and shoulder level or for

09 limitation of arm motion at shoulder level."   (AR 569.)   This finding is not supported by the

10 medical evidence in the record or the opinions of the reviewing doctors, who opined plaintiff

11 could frequently reach overhead with his right upper extremity.   The VA assigned a 30%

12 disability rating for depression with insomnia based on "occupational and social impairment

13 with occasional decrease in work efficiency and intermittent periods of inability to perform

14 occupational tasks (although generally functioning satisfactorily, with routine behavior,

15 self-care, and conversation normal), due to such symptoms as:   depressed moot, anxiety,

16 suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, mild memory

17 loss (such as forgetting names, directions, recent events)."   (*Id.*)   This finding lacks

18 supporting evidence, unlike the non-exertional limitation in the ALJ's RFC, which is supported

19 by the opinion of Dr. Ronay.   Finally, the VA assigned a 50% disability rating for obstructive

20 sleep apnea based on the fact that plaintiff was prescribed a CPAP machine (*id.*), however, as

21 noted above, the ALJ found that plaintiff's sleep apnea would be controlled once he began

22 using the CPAP machine, a finding that plaintiff does not challenge (AR 28).

REPORT & RECOMMENDATION
PAGE -19

01    Because substantial evidence supports the ALJ's decision even when taking into

02 account the VA determination, plaintiff has not shown that remand is necessary so that the ALJ

03 can consider the new evidence in the first instance.

04                                          <u>Step Five</u>

05    The Medical-Vocational Guidelines or "grids" present a short-hand method for

06 determining the availability and numbers of suitable jobs for claimants, addressing factors

07 relevant to a claimant's ability to work, such as age, education, and work experience.  *See* 20

08 C.F.R. Pt. 404, Subpt. P, App 2.   Their purpose is to streamline the administrative process and

09 encourage uniform treatment of claims.   *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999).

10    An ALJ may rely on the grids to meet her burden at step five.   *Burkhart v. Bowen*, 856

11 F.2d 1335, 1340 (9th Cir. 1988).   "They may be used, however, 'only when the grids

12 accurately and completely describe the claimant's abilities and limitations.'" *Id*.  (quoting

13 *Jones v. Heckler*, 760 F.2d 993, 998 (9th Cir. 1985)).   "When a claimant's non-exertional

14 limitations are 'sufficiently severe' so as to significantly limit the range of work permitted by

15 the claimant's exertional limitations, the grids are inapplicable[]" and the testimony of a VE is

16 required.   *Id*. (quoting *Desrosiers v. Sec. of Health & Human Servs.*, 846 F.2d 573, 577 (9th

17 Cir. 1988)); *accord Hoopai v. Astrue*, 499 F.3d 1071, 1076 (9th Cir. 2007) ("[A]n ALJ is

18 required to seek the assistance of a vocational expert when the non-exertional limitations are at

19 a sufficient level of severity such as to make the grids inapplicable to the particular case.").

20    The existence of a non-exertional limitation does not automatically preclude application

21 of the grids.   *Desrosiers*, 846 F.2d at 577; *see also* SSR 83-14 ("Nonexertional impairments

22 . . . may or may not significantly narrow the range of work a person can do."); *Razey v. Heckler*,

01   785 F.2d 1426, 1430 (9th Cir. 1986) ("The regulations . . . explicitly provide for the evaluation

02   of claimants asserting both exertional and nonexertional limitations. [20 C.F.R. Pt. 404, Subpt.

03   P, App. 2] at § 200.00(e)."), *modified at* 794 F.2d 1348 (1986).   Instead, the ALJ must

04   determine whether the non-exertional limitations are "'sufficiently severe' so as to significantly

05   limit the range of work permitted by the claimant's exertional limitations[.]"   *Burkhart*, 856

06   F.2d at 1340 (quoting *Desrosiers*, 846 F.2d at 577).   If so, the grids are inapplicable and the

07   testimony of a VE is required.   *Id*.

08        Plaintiff maintains that the ALJ erred at step five by relying on the grids because he has

09   "significant non-exertional impairments," namely cognitive limitations to simple, repetitive

10   tasks and limited overhead reaching.   The Commissioner responds that the limitation to

11   simple, repetitive tasks did not necessitate VE testimony because the basic demands of

12   unskilled work include, among other things, the ability to "understand, carry out, and remember

13   simple instructions."   SSR 85-15.   The Commissioner also contends that the ALJ was not

14   required to call a VE based on the limitation to occasional overhead reaching on the right.   *See*

15   *Summers v. Comm'r of Soc. Sec.*, No. CIV S-08-1309-CMK, 2009 WL 2051633, at *23 (E.D.

16   Cal. Jul. 10, 2009) (limitation to no frequent forceful overhead reaching with left upper

17   extremity did not require VE testimony); *Martin v. Barnhart*, No. CV F 05-0862 LJO, 2006 WL

18   1748589, at *17 (E.D. Cal. Jun. 26, 2006) (limitation to occasional overhead reaching on the

19   right did not require VE testimony).   Furthermore, the Commissioner points out that SSR

20   83-14 does not state that restrictions on occasional overhead reaching would affect an

21   individual's occupational base for medium work.   *See* SSR 83-14.

22        The Court agrees with the Commissioner on the first issue and with plaintiff on the

REPORT & RECOMMENDATION
PAGE -21

01  second issue.   As the Commissioner argues, the limitation to simple, repetitive tasks does not

02  significantly erode the occupational base of unskilled medium work because it corresponds

03  with the requirements for unskilled work, as set forth in SSR 85-15.   Plaintiff is correct,

04  however, that the ALJ erred by failing to call a VE because the nonexertional limitation to only

05  occasional overhead reaching with the right upper extremity presented a significant limitation

06  on the range of work plaintiff could perform.   *See, e.g.*, *Buford v. Colvin*, No. C13-900-RSL,

07  2014 WL 33214, at *6-7 (W.D. Wash. Jan. 3, 2014) (ALJ erred in failing to call VE where

08  claimant limited to occasional overhead reaching on the right).   As the court in *Buford*

09  explained, lower courts within the Ninth Circuit have come out both ways when considering

10  whether reaching restrictions require VE testimony.   *Id.* (collecting cases).   The court,

11  however, agreed with those cases requiring VE testimony based on SSR 85-15, which provides

12  in relevant part:

13      Reaching, handling, fingering, and feeling require progressively finer usage of
        the upper extremities to perform work-related activities.   Reaching (extending
14      the hands and arms in any direction) and handling (seizing, holding, grasping,
        turning or otherwise working primarily with the whole hand or hands) are
15      activities required in almost all jobs.   *Significant limitations of reaching or
        handling, therefore, may eliminate a large number of occupations a person
16      could otherwise do.   Varying degrees of limitations would have different
        effects, and the assistance of a VS may be needed to determine the effects of the
17      limitations.*

18  SSR 85-15 (emphasis added).   This Court agrees with the *Buford* court that the language of

19  SSR 85-15 suggests that reaching limitations can be significant, and therefore the ALJ's

20  conclusory finding that reaching limitation has "little or no effect on the occupational base of

21  unskilled medium work" (AR 34) is unsupported by the record and thus erroneous.

22      The Court is not persuaded by the Commissioner's contention that the absence of a

REPORT & RECOMMENDATION
PAGE -22

01  discussion of reaching limitations in SSR 84-14 supports the ALJ's finding.  *See Allen v.*

02  *Barnhart*, 417 F.3d 396, 407 (3d Cir. 2005) (holding that "if the Secretary wishes to rely on an

03  SSR as a replacement for a vocational expert, it must be crystal-clear that the SSR is probative

04  as to the way in which the nonexertional limitations impact the ability to work, and thus, the

05  occupational base.").   Rather, as just discussed, SSR 85-15 indicates that reaching limitations

06  can be significant, and thus the ALJ should have consulted a VE to determine the effect of

07  plaintiff's limitation to occasional overhead reaching with the right upper extremity.

08       The Court, in sum, concludes that the ALJ erred in failing to obtain VE testimony.   On

09  remand, the ALJ should consult a VE to consider plaintiff's claim at step five.

10                                   **<u>CONCLUSION</u>**

11       For the reasons set forth above, this matter should be REMANDED for further

12  administrative proceedings.

13       DATED this <u>12th</u> day of March, 2014.

14

15

16                                 Mary Alice Theiler
                                   Chief United States Magistrate Judge

17

18

19

20

21

22

REPORT & RECOMMENDATION
PAGE -23